**IN THE UNITED STATES DISTRICT COURT**
**FOR MIDDLE DISTRICT OF FLORIDA**
**ORLANDO CIVIL DIVISION**

BIANCA FLORES, on her
own behalf and on behalf of all
similarly situated individuals,

      Plaintiff,

v.                                Case No.: 6:19-cv-00844-WWB-GJK

ACORN STAIRLIFTS, INC.,
a Florida Corporation, and

ESR, Inc.,
a California Corporation,

      Defendants.
_____/

## AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Bianca Flores, on behalf of herself, the putative classes set forth below, and in the public interest, brings this Amended Class Action Complaint against Defendants, ESR, Inc., including, subsidiaries, divisions and affiliates, and Acorn Stairlifts, Inc. for violations of the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 et seq. Plaintiff intends to hold Defendants accountable for violating her federally protected privacy rights and failing to provide her with information and notice pursuant to the FCRA.

## PRELIMINARY STATEMENT

1.     Plaintiff is a consumer/applicant who was the subject of a consumer report used for employment purposes by Defendant Acorn Stairlifts, Inc. ("Acorn"). Acorn routinely obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment actions, including denial of employment and terminations.

2.     Defendant ESR, Inc. ("ESR") is a consumer reporting agency. ESR provides

employers with consumer reports, commonly referred to as "background checks," for employment purposes. Employers rely on these reports to make employment related decisions on applicants and employees. Here, ESR sold Plaintiff's consumer report to Acorn.

3. The FCRA, 15 U.S.C. § 1681b, makes it presumptively unlawful to obtain and use a consumer report for an employment purpose. The use of a consumer report for employment purposes only becomes lawful if and only if the consumer reporting agency and the user, *i.e.* employer, comply with the FCRA's strict requirements.

4. Defendants willfully violated these requirements in multiple ways, in systematic violation of Plaintiff's rights and the rights of other putative class members.

5. Acorn violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members for employment purposes, without first providing a clear and conspicuous disclosure before procuring the report. Under this subsection of the FCRA, Acorn was required to disclose to its applicants and employees – ***in a document that consists solely of the disclosure*** – that it may obtain a consumer report on them for employment purposes, before obtaining a copy of their consumer report. *Id.* Acorn willfully violated this requirement by failing to provide Plaintiff a clear and conspicuous disclosure on a document consisting solely of the disclosure that it may obtain a consumer report on her for employment purposes, prior to obtaining a copy of her consumer report.

6. Acorn violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by obtaining consumer reports on Plaintiff and other putative class members without proper authorization, due to the fact that its disclosure forms fail to comply with the requirements of the FCRA.

7. Acorn violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action against Plaintiff and other putative class members without first providing Plaintiff and other affected class members with pre-adverse action notice, a copy of their consumer report, and a summary of

their FCRA rights.   Consequently, consumers were deprived of the opportunity to confirm the accuracy of their report, learn the contents of their report, or dispute their report with the consumer reporting agency that compiled it.

8.      ESR violated 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii) by providing consumer reports used for employment purposes without valid certification from Acorn that it had complied with the disclosure, authorization and notice requirements set forth in 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii).

9.      Plaintiff asserts FCRA claims against Acorn on behalf of herself and others who were not provided a lawful disclosure document prior to Acorn obtaining their consumer report for employment purposes and those who were not provided pre-adverse action notice, copy of their report and summary of rights before Acorn took adverse action against them.

10.      Plaintiff asserts FCRA claims against ESR on behalf of herself and class consisting of consumers whose consumer reports were released by ESR without a valid certification from the user that it had complied with the FCRA's disclosure requirements *before* ESR released the consumer's report.

11.      In Counts I and II, Plaintiff asserts a FCRA claim under 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) on behalf of a "Background Check Class" consisting of:

> **All ACORN STAIRLIFTS, INC. employees and job applicants in the United States who were the subject of a consumer report that was procured by Defendant within two years of the filing of this complaint through the date of final judgment in this action but were not provided the disclosure required by 15 U.S.C. § 1681b(b)(2)(A)(i).**

12.      In Count III, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(3)(A) on behalf of an "Adverse Action Class," consisting of:

> **All ACORN STAIRLIFTS, INC. employees and prospective employees in the United States against whom adverse employment action was taken based, in whole or in part, on information contained in a consumer report obtained within five years of the filing of this complaint through the date of final judgment in this action, who were not first provided notice, a copy of the consumer report or a summary of rights pursuant to**

**15 U.S.C. § 1681b(b)(3)(A).**

13.     In Count IV, Plaintiff asserts a FCRA claim under 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii) against ESR, Inc. on behalf of a "Certification Class" consisting of:

> **All employees and job applicants in the United States who were the subject of a consumer report furnished by ESR, Inc. without first obtaining a valid certification of compliance as required by 15 U.S.C. § 1681b(b)(1)(A)(i) from the user of the report within five years of the filing of this complaint through the date of final judgment in this action.**

14.     On behalf of themselves and the putative classes, Plaintiff seeks statutory damages, costs and attorneys' fees, and other appropriate relief under the FCRA.

## THE PARTIES

15.     Individual and representative Plaintiff, Bianca Flores ("Plaintiff") is a member of the putative Background Check, Adverse Action, and Certification classes defined below.

16.     Acorn is a corporation and user of consumer reports as contemplated by the FCRA, at 15 U.S.C. § 1681b.

17.     ESR is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and provides consumer reports to users for employment purposes.

## JURISDICTION AND VENUE

18.     This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331.

19.     Venue is proper in the United States District Court for the Middle District of Florida, Orlando Division, because the underlying events occurred in or near Orlando, Florida.  Additionally, Acorn is headquartered in Orlando, Florida and ESR regularly furnishes consumer reports for employment purposes to users in Florida.

## ALLEGATIONS REGARDING DEFENDANT ACORN'S BUSINESS PRACTICES

### *Acorn's Use of Background Checks*

20.     Acorn conducts background checks on many of its job applicants as part of a standard screening process.  Acorn also conducts background checks on existing employees from time-to-time during the course of their employment.

21.     Acorn did not perform these background checks in-house.  Rather, Acorn used a consumer reporting agency, specifically ESR, to obtain this information and report it to Acorn.  This report is a "consumer report," which Acorn used for employment purposes.

### Acorn's FCRA Violations Relating to Background Check Class

22.     Acorn procured a consumer report on Plaintiff in violation of the FCRA.

23.     Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

> (i)      *a clear and conspicuous disclosure* has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and
>
> (ii)     the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report.

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) (*emphasis added*).

24.     Acorn failed to satisfy these disclosure and authorization requirements.

25.     Acorn did not provide consumers a clear and conspicuous disclosure before procuring consumer reports.  In fact, the purported disclosure was not clear because it contained language that a reasonable person would not understand.  Likewise, the purported disclosure was not conspicuous because it was obfuscated by other information.

26.     Acorn did not have a stand-alone FCRA disclosure or authorization form.  The FCRA requires that a disclosure not contain extraneous information.  This is commonly referred to as the "stand alone disclosure" requirement.  Acorn's purported FCRA disclosure contained extraneous information.

27.     Providing notice to consumers is a critical component of the FCRA, evidenced by the fact the FCRA also contains several other notice provisions, including 15 U.S.C. § 1681b(b)(3)(a) (pre-adverse action).[1]

28.     The purpose of FCRA notice provisions, including § 1681b(b)(2)(A)(i), is to put consumers on notice that a consumer report may be prepared.  This gives consumers the opportunity to exercise substantive rights conferred by the FCRA or other statutes, allowing consumers the opportunity to ensure accuracy, confidentiality and fairness in the use of their personal, private information.

29.     Without clear notice that a consumer report is going to be procured, applicants and employees are deprived of the opportunity to make informed decisions or otherwise assert protected rights.

30.     Using a FCRA disclosure that is not "stand alone" violates the plain language of the statute, and flies in the face of unambiguous case law and regulatory guidance from the Federal Trade Commission ("FTC").   *Graham v. Pyramid Healthcare Sols., Inc.*, No. 8:16-CV-1324-T-30AAS, 2016 WL 6248309, at *2 (M.D. Fla. Oct. 26, 2016) ("[Plaintiff] has statutorily-created rights under the FCRA to receive a clear and conspicuous stand-alone disclosure."); *Fosbrink v. Area Wide Protective, Inc.*, No. 8:17-cv-1154-T-30TBM, 2018 WL 2229130, at *3 (M.D. Fla. May 8, 2018) (denying motion to dismiss, court noted "In sum, Plaintiff has established that he was deprived of a statutory right to receive a stand-alone disclosure.")

31.     Acorn knowingly and recklessly disregarded case law and regulatory guidance and willfully violated 15 U.S.C. § 1681b(b)(2)(A) by procuring consumer report information  on consumers without complying with the disclosure and authorization requirements of the statute. Acorn's violations were willful because Acorn knew it was required to use a stand-alone disclosure

---

[1] *See, e.g.*  15 U.S.C. § 1681b(4)(B)(notice of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding use of public record information); § 1681h (form and conditions of disclosure; and § 1681m(a) (notice of adverse action).

form prior to obtaining and using a consumer report on the putative class members.

32.     Acorn's conduct is also willful because:

    a.     Acorn is a large and sophisticated employer with access to legal advice through its own attorneys and there is no evidence it determined its own conduct was lawful;

    b.     Acorn knew or had reason to know that its conduct was inconsistent with published FCRA guidance interpreting the FCRA, case law and the plain language of the statute; and

    c.     Acorn voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

33.     Acorn acted in a deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Background Check class members.  Acorn knew or should have known about its legal obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in promulgations of the FTC and in established case law.  Acorn had access to materials and resources advising them of their duties under the FCRA.  Any reasonable employer of Acorn's size and sophistication knows or should know about FCRA compliance requirements.

### *Acorn's FCRA Violations Relating to Adverse Action Class*

34.     The FCRA also provides that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report[.]" 15 U.S.C. § 1681b(b)(3)(A)(i).

35.     Acorn typically does not provide consumers with a copy of their consumer report before taking adverse action against them based on the information in such reports.  In the instant case, Acorn terminated Plaintiff based on the contents of a consumer report obtained from ESR but

failed to provide Plaintiff with pre-adverse action notice, a copy of her report or a summary of her FCRA rights.

36.     Acorn violated 15 U.S.C. § 1681b(b)(3)(A), which requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken.  Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action.  Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information.[2]

37.     By failing to provide Plaintiff and other putative class members with the information required by 15 U.S.C. § 1681b(b)(3)(A) before taking adverse employment action against them based on the information contained in such reports, Acorn willfully disregarded unambiguous regulatory guidance as well as the plain language of the statute.  15 U.S.C. § 1681b(b)(3)(A).

### *ESR's FCRA Violations Relating to the Certification Class*

38.     Congress has recognized consumer reporting agencies like ESR have assumed a vital role in assembling information on consumers, and therefore implemented the FCRA to ensure credit reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *15 U.S.C. § 1681.*

39.     In accordance with Congress' findings, a consumer reporting agency may only furnish a consumer report for employment purposes if the user has certified its compliance with 15 U.S.C. § 1681b(b)(2)(A) *before* the report is furnished and certifies future compliance with 15 U.S.C. § 1681b(b)(3), if applicable.  *15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii).*

40.     The certification requirement reads, in pertinent part:

(1)  **Certification from user** A consumer reporting agency may furnish a

---

[2] Letter from William Haynes, Fed. Trade Comm'n, to A. Michael Rosen, Esq., Sr. VP Background America, *Inc.* (Jun. 9, 1998), 1998 WL 34323763 (F.T.C.) at *1, available at: https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-rosen-06-09-98.

consumer report for employment purposes **only** if –

**(A)** the person who obtains such report from the agency certifies to the agency that –

(i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable.

*15 U.S.C. § 1681b(b)(1)(A)(i).*

41.     A consumer reporting agency that furnishes consumer reports used for employment purposes without receiving the requisite certification of FCRA compliance from the user is furnishing the consumer report unlawfully. *15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii).* The paragraphs referenced in § 1681b(b)(1)(A)(i) include, *inter alia*, the stand alone disclosure and written authorization requirements set forth in § 1681b(b)(2)(A).

42.     The purpose of the certification requirement is to ensure users of consumer reports for employment purposes follow the statutory framework created by Congress to safeguard consumers' rights to notice, privacy and information.

43.     ESR furnished consumer reports to Acorn and other employment-purpose users based upon a bogus certification of compliance.

44.     It is flatly illegal for a consumer reporting agency to furnish a consumer report for employment purposes unless the consumer reporting agency has received the FCRA-mandated certification of FCRA compliance from the user.   In fact, compliance with the certification requirement provides the *only* lawful means for a consumer reporting agency to furnish a consumer report for employment purposes.   ESR knew or should have known the certification obtained from Acorn was patently false and therefore invalid. Consequently, ESR had no permissible purpose to release Plaintiff's consumer report.

### *How Acorn and ESR Violated Plaintiff's Rights*

45.     In or around April 2018, Plaintiff applied for employment with Acorn.

46.    As part of the hiring process, Plaintiff received an e-mail containing a link to applicant-facing web portal administered and hosted by ESR.  Unbeknownst to Plaintiff, Acorn and ESR were parties to an agreement pursuant to which ESR agreed to provide FCRA disclosures to Acorn's applicants and provide their consumer reports for Acorn.

47.    To initiate the e-mail, ESR required Acorn to certify to ESR that "A clear and conspicuous disclosure has been made to the consumer by end-user (in a document that consists solely of the disclosure) stating that a consumer report and/or investigative consumer report may be obtained for employment purposes."

48.    The certification required by ESR was patently false because the disclosure ESR created for Acorn and used to disclose Acorn's applicants was not a stand alone disclosure.

49.    The FCRA disclosure Plaintiff received from ESR via the website unlawfully inserted extraneous provisions into the form purporting to grant Acorn authority to obtain and use consumer report information for employment purposes.  The FCRA forbids this practice, since it mandates that all disclosures granting the authority to access and use consumer report information for employment purposes be "stand alone" and unencumbered any extraneous information or additional agreements.

50.    Plaintiff was distracted from the disclosure by the presence of additional information in the purported FCRA Disclosure.

51.    The FCRA disclosure presented to Plaintiff was not clear and conspicuous, and was not easily understandable by a lay person.

52.    Plaintiff was confused about the nature and scope of Acorn's investigation into her background.

53.    Plaintiff was confused about her rights due to the presence of the additional language contained in the disclosure.

54.    Plaintiff values her privacy rights.  If Plaintiff was aware Acorn had presented her

with an unlawful FCRA disclosure, Plaintiff would not have authorized Acorn to procure her consumer report.

55.     Because Acorn did not provide Plaintiff with a lawful disclosure before obtaining her report for employment purposes, any purported authorization thereon was invalid.

56.     Similarly, the purported certification ESR received from Acorn was patently false and therefore invalid because it was not a "clear and conspicuous disclosure" in a document "that consists solely of the disclosure."

57.     Without a valid certification from Acorn, ESR had no lawful right to sell Plaintiff's consumer report to Acorn.

58.     Plaintiff was hired by Acorn.  Two weeks later, Plaintiff was terminated.  Plaintiff was told she was being terminated because of her background check.

59.     Acorn did not provide Plaintiff a copy of her background check or the opportunity to review her background check for accuracy.

60.     Plaintiff was escorted from Acorn's premises without knowing the contents of her consumer report or whether it was accurate after being fired.  Plaintiff was worried about the contents of her consumer report.

61.     Because Acorn did not provide Plaintiff with the notice and information required, Plaintiff was required to spend time obtaining her consumer report and learn about her legal rights.

## CLASS ACTION ALLEGATIONS

62.     In Count I and II, pursuant to Federal Rules of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of a Background Check Class (the "Class"), defined as:

> **All ACORN STAIRLIFTS, INC. employees and job applicants in the United States who were the subject of a consumer report for employment purposes that was procured by ACORN STAIRLIFTS, INC. within two years of the filing of this complaint through the date of final judgment in this action and to whom Defendant failed to provide a lawful disclosure pursuant to 15 U.S.C. § 1681b(b)(2)(A).**

63.     In Count III, pursuant to Federal Rules of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of an Adverse Action Class (the "Adverse Class"), defined as:

> **All ACORN STAIRLIFTS, INC. employees and prospective employees in the United States against whom adverse employment action was taken, based, in whole or in part, on information contained in a consumer report obtained within five years of the filing of this complaint through the date of final judgment in this action, and who were not provided the proper pre-adverse action notice as required by 15 U.S.C. § 1681b(b)(3)(A).**

64.     In Count IV, Pursuant to Federal Rules of Civil Procedure 23, Plaintiff brings this claim for herself and on behalf of a "Certification Class" defined as:

> **All employees and job applicants in the United States who were the subject of a consumer report furnished by ESR, Inc. without first obtaining a valid certification of compliance as required by 15 U.S.C. § 1681b(b)(1)(A)(i) from the user of the report within five years of the filing of this complaint through the date of final judgment in this action.**

65.     <u>Numerosity</u>:     The members of the putative Background Class, Adverse Action and Certification classes are so numerous that joinder of all Class members is impracticable. Defendant Acorn regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently rely on such information, in whole or in part, in the hiring process.   Plaintiff is informed and believes that during the relevant time period there are hundreds of Acorn's employees and prospective employees that satisfy the definition of the putative classes.   Defendant ESR regularly furnishes consumer reports to employers, who rely on such information, in whole or in part, in the hiring process.   Plaintiff is informed and believes that during the relevant time period Defendant ESR furnished thousands of consumers that satisfy the definition of the putative Certification Class.

66.     <u>Typicality</u>:     Plaintiff's claims are typical of those of the members of the putative classes.   Defendant Acorn typically uses consumer reports to conduct background checks on employees and prospective employees.   Defendant ESR regularly furnishes consumer reports to

employers, who rely on such information, in whole or in part, in the hiring process.   The FCRA violations suffered by Plaintiff are typical of those suffered by other  members of the putative classes.

67.   Adequacy:     Plaintiff is a member of and will fairly and adequately protect the interests of the putative classes, and has retained counsel experienced in complex class action litigation.

68.   Commonality:   Common questions of law and fact exist as to all members of the putative classes, and predominate over any questions solely affecting individual members of the putative classes.  These common questions include, but are not limited to:

a.      whether Defendant Acorn uses consumer report information to conduct background checks on employees and prospective employees;

b.      whether Defendant Acorn's background check practices and/or procedures comply with the FCRA;

c.      whether Defendant Acorn violated the FCRA by procuring consumer report information without making proper disclosures in the format required by the statute;

d.      whether Defendant Acorn violated the FCRA by procuring consumer report information based on invalid authorizations;

e.      whether Defendant Acorn violated the FCRA by taking adverse action against Plaintiff and other members of the Adverse Class that was based on information in a consumer report, without providing pre-adverse action notice, a copy of their consumer report, or summary of FCRA rights;

f.      whether the disclosures ESR provided to applicant failed to meet the requirements of the FCRA;

g.      whether Defendant ESR violated the FCRA by furnishing consumer reports to users for employment purposes without valid certifications from such users; and

h.      the proper measure of statutory damages.

69.    This case is maintainable as a class action because prosecution of actions by or against individual members of the putative classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for the Defendants. Further, adjudication of each individual Class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

70.    This case is also maintainable as a class action because Defendants acted or refused to act on grounds that apply generally to the putative classes.

71.    Class certification is also appropriate because questions of law and fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct, which is described herein, stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative classes do not have an interest in pursuing separate actions against the Defendants, as the amount of each Class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single

forum.

72.     Plaintiff intends to send notice to all members of the putative classes to the extent required by Federal Rules of Civil Procedure 23.   The names and addresses of the putative class members are readily available from Defendants' records.

<u>**COUNT I**</u>
**Failure to Make Proper Disclosure in**
<u>**Violation of FCRA  1 5  U.S.C. § 1681b(b)(2)(A)(i)**</u>

73.     Plaintiff alleges and incorporates by reference the allegations set forth in paragraphs 1, 5, 6, 7, 9, 16, 20-26, 31-33, and 45-61.

74.     The FCRA disclosure Acorn required the Background Check Class to complete as a condition of its employment with Acorn does not satisfy the disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i) because Acorn failed to provide a stand-alone document as to the consumer report information being obtained and utilized.

*Plaintiff's First Concrete Injury under § 1681b(b)(2)(A)(i): Informational Injury*

75.     Plaintiff suffered a concrete informational injury because Acorn failed to provide Plaintiff with information to which she was entitled to by statute, namely a stand-alone FCRA disclosure form.  Through the FCRA, Congress created a new right – the right to receive the required disclosure as set out in the FCRA – and a new injury – not receiving a stand-alone disclosure.

76.     Pursuant to § 1681b(b)(2), Plaintiff was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure.  Such a disclosure was required to be provided to Plaintiff *before* the consumer report was to be procured.  By depriving Plaintiff of this information, in the form and at the time she was entitled to receive it, Acorn injured Plaintiff and the putative class members she seeks to represent.

77.     Acorn violated the FCRA by procuring consumer reports on Plaintiff and other

Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i).  Namely, these disclosures had to be made: (1) before Acorn actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that Acorn might procure a consumer report on each of them for purposes of employment.  The required disclosures were not made, causing Plaintiff an informational injury.

78.    Acorn's failure to provide Plaintiff and the putative classes with a lawful disclosure created a risk of harm that Plaintiff and members of the putative class would be confused and distracted by the extraneous language.

### *Plaintiff's Second Concrete Injury under § 1681b(b)(2)(A)(i): Invasion of Privacy*

79.    Acorn invaded Plaintiff's right to privacy.  Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii).

80.    The FCRA created a statutory cause of action akin to invasions of privacy and intrusions upon seclusion, harms recognized as providing the basis for lawsuits under English and American law.   Acorn invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion by procuring a consumer report on her and viewing her private and personal information without lawful authorization.

81.    The foregoing violations were willful.  At the time Acorn violated 15 U.S.C. § 1681b(b)(2)(A)(i), Acorn knew it was required to provide a stand-alone disclosure prior to obtaining a consumer report on Plaintiff and the putative class.  A plethora of authority, including both case law and FTC opinions, existed at the time of Acorn's violations on this very issue.  Acorn's willful conduct is also reflected by, among other things, the following facts:

a.   Acorn is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

b.   Acorn knew or had reason to know that their conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

c.   Acorn voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

82.   Plaintiff and the Background Check Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

83.   Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of herself and the putative class, prays for relief as follows:

a.   determining that this action may proceed as a class action;

b.   designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c.   issuing proper notice to the putative class at Defendant's expense;

d.   awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.   awarding reasonable attorneys' fees and costs as provided by the FCRA.

<u>**COUNT II**</u>
**Failure to Obtain Proper Authorization in**
<u>**Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(ii)**</u>

84.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 1, 5, 6, 7, 9, 16, 20-26, 31-33, and 45-61.

85.     Acorn violated the FCRA by procuring consumer reports relating to Plaintiff and other Background Check Class members without proper authorization.

86.     The authorization requirement under 15 U.S.C. § 1681b(b)(2)(A)(ii) follows the disclosure requirement of § 1681b(b)(2)(A)(i) and presupposes that the authorization is based upon a valid disclosure.  "After all, one cannot meaningfully authorize her employer to take an action if she does not grasp what that action entails."

*Plaintiff's First Concrete Injury under § 1681b(b)(2)(A)(ii): Informational Injury*

87.     Plaintiff suffered a concrete informational injury because Acorn failed to provide Plaintiff with information to which she was entitled to by statute, namely a stand-alone FCRA disclosure form.  Thus, through the FCRA, Congress has created a new right—the right to receive the required disclosure as set out in the FCRA—and a new injury—not receiving a stand-alone disclosure.

88.     Pursuant to § 1681b(b)(2), Plaintiff was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure.  Such a disclosure was required to be provided to Plaintiff before the consumer report was to be procured.  By depriving Plaintiff of this information, Acorn injured Plaintiff and the putative class members she seeks to represent.

89.     Acorn violated the FCRA by procuring consumer reports on Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i).  Namely, these disclosures had to be made: (1) before Acorn actually

procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that Acorn might procure a consumer report on each of them for purposes of employment.

90.     Plaintiff suffered an informational injury.   Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (i.e., disclosure and authorization) set forth in subsection 15 U.S.C. § 1681b(b)(2).

91.     Acorn's failure to provide Plaintiff and the putative classes with a lawful disclosure created a risk of harm that Plaintiff and members of the putative classes would be confused and distracted by the extraneous language.

### *Plaintiff's Second Concrete Injury under § 1681b(b)(2)(A)(ii): Invasion of Privacy*

92.     Additionally, Acorn invaded Plaintiff's right to privacy and intruded upon her seclusion.   Under the FCRA, a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in subsections 15 U.S.C. §§ 1681b(b)(2)(a)(i)-(ii).

93.     The foregoing violations were willful.   At the time Acorn violated 15 U.S.C. § 1681b(b)(2)(A)(ii), Acorn knew that in order for it to have authorization to obtain consumer reports on Plaintiff and the putative class members it was required to provide a lawful disclosure prior to obtaining a consumer report on Plaintiff and the putative class.   A plethora of authority, including both case law, and FTC opinions, existed at the time of Acorn's violations on this very issue. Acorn's willful conduct is also reflected by, among other things, the following facts:

      a.     Acorn is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not

contemporaneous evidence that it determined that its conduct was lawful;

b.      Acorn knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

c.      Acorn voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

94.     Plaintiff and the Background Check Class are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

95.     Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of herself and the putative class, prays for relief as follows:

a.      determining that this action may proceed as a class action;

b.      designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c.      issuing proper notice to the putative class at Defendant's expense;

d.      awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.      awarding reasonable attorneys' fees and costs as provided by the FCRA.

### COUNT III
### Failure to Provide Adverse Action Notice in
### Violation of FCRA 15 U.S.C. § 1681b(b)(3)(A)

96.     Plaintiff alleges and incorporates by reference the allegations in paragraphs 1, 5, 6,

7, 9, 16, 20-22, 34-37 and 45-61.

97.     Acorn used a consumer report to take adverse employment action against Plaintiff and other members of the Adverse Action Class.

98.     Acorn violated the FCRA by failing to provide Plaintiff and other Adverse Action Class members with pre-adverse action notice, a summary of their FCRA rights and a copy of their consumer report used to take adverse employment action against them, before taking such adverse action. *See* 15 U.S.C. § 1681b(b)(3)(A).

99.     The foregoing violations were willful.  Acorn acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A).  Acorn knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission.  Acorn obtained or otherwise had available substantial written materials that apprised Acorn of its duties under the FCRA.  Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

100.     Moreover, at the time Acorn failed to follow 15 U.S.C. § 1681b(b)(3)(A) a plethora of FTC opinions and case law existed.

### *Plaintiff's First Concrete Injury: Informational Injury*

101.     Plaintiff suffered a concrete informational injury because Acorn failed to provide Plaintiff with information to which she was entitled to by statute, namely pre-adverse action notice, before adverse action was taken.  This notice should have included all information prescribed by § 1681b(b)(3)(A), including: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under § 1681g(c)(3) of the FCRA.

102.     Through the FCRA, Congress has created a new right—the right to receive pre-adverse notice as set out in the FCRA—and a new injury—not receiving said notice.  The Plaintiff's

21

"inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

***Plaintiff's Second Concrete Injury: Inability to***
***Learn of the Contents of Her Report and Tell Her Side of the Story***

103.    Separately from the informational injury suffered, Plaintiff and Class Members have Article III standing to pursue claims for violations of § 1681b(b)(3) because Acorn's failure to provide timely notice deprived Plaintiff and Class Members of the opportunity to learn about the information in their consumer report and tell Acorn their side of the story before Acorn took adverse action.  Thus, Plaintiff was denied the opportunity to determine if the information contained in her consumer report was indeed correct, and to understand how it might affect her future efforts to obtain employment.

104.    With these two recognized injuries directly traceable to Acorn's failure to timely provide the notices required by § 1681b(b)(3), Plaintiff unquestionably has established Article III standing.

105.    Plaintiff and the Adverse Action Class are entitled to statutory damages of one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

106.    Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of herself and the putative class, prays for relief as follows:

      a.    determining that this action may proceed as a class action;

      b.    designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative classes;

    c.      issuing proper notice to the putative classes at Acorn's expense;

    d.      awarding statutory damages as provided by the FCRA, including punitive

              damages, to members of the putative class; and

    e.      awarding reasonable attorneys' fees and costs as provided by the FCRA.

**<u>Count IV</u>**
**Failing to Obtain a Valid Certification Prior to Furnishing a Consumer**
**<u>Report for Employment Purposes Violation of 15 U.S.C. § 1681b(b)(1)(A)(i)</u>**

107.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 2, 8, 10, 17, 38-44, and 45-57.

108.    ESR willfully violated 15 U.S.C. § 1681b(b)(1)(A) because it furnished Plaintiff's consumer report, which was used for employment purposes, without a valid certification from the user that it had complied with the disclosure and notification requirements set forth in 15 U.S.C. § 1681b(b)(A)(i).

109.    ESR invaded Plaintiff's privacy by compiling Plaintiff's personal, private and sensitive information into a consumer report for employment purposes, and furnishing said consumer reports without a permissible purpose.

110.    ESR caused Plaintiff injury because the report ESR furnished was used, in whole or in part, as the basis for an adverse employment action.

111.    ESR caused Plaintiff injury because ESR permitted users of their consumer, in this case Acorn, reports to circumvent the disclosure requirements of the FCRA when using consumer reports for employment purposes by requiring users to execute a false certification of compliance as a condition for receiving the consumer reports.

112.    ESR caused Plaintiff injury by profiting on Plaintiff's personal and sensitive information without a permissible purpose, since it illegally released her consumer report.

113.    The foregoing violations were willful.   At the time ESR violated 15 U.S.C. §

1681b(b)(1)(A), ESR knew it was requiring Acorn to execute a false certification of compliance with 15 U.S.C. § 1681b(b)(2)(A) since ESR created and provided to consumers the unlawful disclosure. ESR's willful conduct is also reflected by, among other things, the following facts:

    a.  ESR knew of potential FCRA liability;

    b.  ESR is a consumer reporting agency with access to legal advice through their own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

    c.  The FCRA's certification requirement is clearly spelled out in the plain language of the statute;

    d.  ESR knew or had reason to know that their conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

    e.  ESR voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

114.    The Plaintiff and the "Certification Class" are entitled to statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

115.    The Plaintiffs and the "Certification Class" are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiffs, on behalf of themselves and the putative "Certification Class" pray for relief as follows:

    a.  determining that this action may proceed as a class action;

b.   designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c.   issuing proper notice to the putative class at ESR's expense;

d.   awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

e.   awarding reasonable attorneys' fees and costs as provided by the FCRA.

## DEMAND FOR JURY TRIAL

Plaintiff and the putative classes demand a trial by jury.

Dated this 27th day of August, 2019.

/s/ *Marc R. Edelman*
MARC R. EDELMAN, ESQ.
Fla. Bar No. 0096342
MORGAN & MORGAN, P.A.
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone 813-223-5505
Fax:  813-257-0572
MEdelman@forthepeople.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of August, 2019, a copy of the foregoing was sent via electronic transmission and/or via U.S. Mail to the following:

Susan N. Eisenberg, Esq.
Clark S. Splichal, Esq.
Cozen O'Connor
200 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
seisenberg@cozen.com
csplichal@cozen.com
*Counsel for Defendant*

/s/ *Marc R. Edelman*
Marc R. Edelman, Esq.